**Debra L. KRAUSS, a/k/a Debra L. Love, Plaintiff–Appellant,**

v.

**CATHOLIC HEALTH INITIATIVES MOUNTAIN REGION, d/b/a Penrose Connection, a/k/a Centura Health, a/k/a St. Anthony Central Hospital, Defendant–Appellee.**

No. 02CA0108.

Colorado Court of Appeals, Div. III.

Jan. 30, 2003.

Opinion by Judge WEBB.

In this employment case, plaintiff, Debra L. Krauss (employee), appeals the summary judgment entered in favor of defendant, Catholic Health Initiatives Mountain Region (employer). She contends disputed issues of material fact exist concerning denial of or interference with her rights under the Family Medical Leave Act (FMLA), retaliation for her exercise of FMLA rights, constructive discharge, and public policy wrongful discharge. We discern no material fact issues and therefore affirm.

Employee was a long-term employee of employer. In early February 2000, she took FMLA leave because of a serious health problem. Employee had not been medically cleared to return to work when her twelve-week FMLA leave entitlement was exhausted. After giving her additional FMLA leave, employer discharged her when she failed to request personal leave or return to work.

Employee then brought this action. The parties agreed to conduct discovery before employer answered. Employer moved to dismiss based in part on employee's deposition. The trial court treated employer's motion as a motion for summary judgment and granted it on all claims.

We review a trial court's decision to grant summary judgment de novo using established standards. Summary judgment is appropriate only if the pleadings and supporting documents demonstrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to establish that no genuine issue of material fact exists, and any doubt should be resolved against the moving party. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

Once the moving party shows the absence of any material fact issue, the nonmoving party must demonstrate the existence of such an issue. C.R.C.P. 56(e); *Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970). The nonmoving party must make this showing with admissible evidence and cannot rely on either pleadings, *Smith v. Mehaffy*, 30 P.3d 727 (Colo.App.2000), or argument alone. *Bauer v. Southwest Denver Mental Health Center, Inc.*, 701 P.2d 114 (Colo.App.1985).

## I. Violation of the FMLA

Employee argues disputed fact issues remain concerning employer's violation of the FMLA. We disagree.

The FMLA guarantees a qualified employee twelve weeks of unpaid leave each year for various reasons, including the employee's serious health problems. 29 U.S.C. §§ 2601–2654 (2002). An employer must reinstate the employee to his or her former position or its equivalent upon the employee's timely return from FMLA leave. 29 U.S.C. § 2614(a)(1).

Under 29 U.S.C. § 2617(a), employees may sue to enforce their FMLA rights on the basis of either the entitlement or interference theory, § 2615(a)(1), or the retaliation or discrimination theory, § 2615(a)(2). *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955 (10th Cir.2002).

### A. Deprivation of FMLA Rights

 Employee first contends employer deprived her of FMLA rights by discharging her while she was on FMLA leave. We disagree.

 An entitlement claim involves proof of an FMLA right; the employer's interference with, restraint of, or denial of that right; and resulting prejudice to the employee. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002).

An employer must give the employee written notice, within one or two days after a leave request, if feasible, when leave is being treated as FMLA leave. 29 C.F.R. § 825.301(c). Further, "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." 29 C.F.R. § 825.700(a).

In *Ragsdale*, the Supreme Court assumed the regulatory notice requirement was valid. However, the court invalidated the regulato-

ry penalty that leave taken before designation did not count as FMLA leave, which has no statutory counterpart, because the penalty wrongfully relieves employees from showing actual harm.

Here, employee was hospitalized on February 4, 2000. On February 14, she requested twelve weeks of FMLA leave, retroactively from February 5 until May 5.

On March 23, employer notified employee by letter that her FMLA leave would expire April 1, because she had used some of her FMLA leave before February 5. The letter specified that employee must return to work at that time or obtain a personal leave. Plaintiff did not respond.

On April 4, employer telephoned employee and told her that her FMLA time had expired and she could have additional FMLA leave until May 8, but she needed to either return to work or obtain a personal leave by that date.

Employee received a letter from employer dated April 20 stating that she had to contact employer by May 8 concerning her intention to go on a personal leave or employer would "assume you are not interested in going on a personal leave and your employment with [employer] will be terminated." Again, employee did not respond.

Employer discharged employee on May 11. By then, employee had received more than twelve weeks of FMLA leave since she first took FMLA leave in June 1999 and twelve weeks of FMLA leave since February 5, 2000. Employee was medically unable to return to work until June 5, 2000.

Nevertheless, citing the penalty in 29 C.F.R. § 825.700(a), employee argues her FMLA leave had not been exhausted by May 5 because this leave could not begin to count against her FMLA entitlement until employer gave her notice by the letter of March 23. *Ragsdale* invalidated § 825.700(a) and therefore defeats this argument.

Accordingly, we conclude the trial court did not err in finding employer discharged employee only after her FMLA leave had been exhausted.

### B. Interference with FMLA Rights

Employee next asserts employer interfered with her FMLA rights when her supervisor verbally reprimanded her for absences that another supervisor had approved as intermittent leave under FMLA. She also asserts interference claiming employer failed to give her timely notice that her leave was FMLA leave, misinformed her when her FMLA leave expired, did not explain how it counted her personal time off, did not explain whether it calculated her FMLA leave on a calendar year basis, failed to post information about FMLA rights, and removed FMLA leave forms from her desk. We are not persuaded.

With respect to the verbal reprimand, no disciplinary action was taken against employee. She received no further verbal reprimands concerning leave, and thereafter employer allowed her to take FMLA leave whenever she requested it.

With respect to the other aspects of this claim, even if a factual issue of interference exists, employee agrees that she received more than twelve weeks of FMLA leave before she was discharged, including the twelve weeks of leave that she requested from February 5 to May 5. Hence, employee has not shown prejudice. *See Ragsdale, supra.*

The regulations that employee cites are inapposite or provide no remedy: 29 C.F.R. § 825.208(c) deals with employers that require paid leave to be counted as FMLA leave; 29 C.F.R. § 825.300 applies to adverse action taken because an employee failed to furnish advance notice of the need to take FMLA leave; and 29 C.F.R. § 825.301 only sets forth general notice requirements.

The record also belies employee's assertion that employer's acts and omissions left her confused about her FMLA rights. Employee requested FMLA leave on more than one occasion. She received general information from employer outlining her FMLA rights and responsibilities when she requested those leaves. Further, she received the two letters from employer notifying her when her FMLA leave would end, what steps she should take to maintain her employment, and the consequences if she failed to do so.

Therefore, we conclude employee was adequately informed concerning FMLA leave. *See DeLong v. Trujillo,* 25 P.3d 1194 (Colo. 2001).

Moreover, employee does not explain how she would have acted differently had employer notified her earlier that it was treating her leave as FMLA leave, posted signs concerning the FMLA, or replaced the FMLA leave forms in her desk. Employee does not dispute that she was medically unable to work from February 4 until June 5. Thus, we further conclude employee could not have acted differently. *See, e.g., Hill v. Steven Motors, Inc.,* 228 F.Supp.2d 1247 (D.Kan. 2002); *Kelso v. Corning Cable Systems International Corp.,* 224 F.Supp.2d 1052 (W.D.N.C.2002); *Summers v. Middleton & Reutlinger, P.S.C.,* 214 F.Supp.2d 751 (W.D.Ky.2002).

Accordingly, we conclude employee failed to raise a fact issue of how she was prejudiced by employer's interference, if any, with her FMLA rights.

### C. Retaliation for Exercise of FMLA Rights

Employee next argues she established a prima facie case of retaliation for exercising her FMLA rights because employer denied her request for 1999 Christmas vacation and then terminated her employment in May 2000, while she was on FMLA leave. We disagree.

To establish a prima facie case of retaliation, an employee must show assertion of an FMLA right, followed by an adverse employment action, and a causal connection between the assertion and the adverse action. 29 U.S.C. § 2615(a)(2); *Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir.1997).

To avoid summary judgment, an employee must raise a genuine issue of material fact on each element of the prima facie case. The burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its adverse action. If the employer's evidence satisfies this burden, then the presumption of unlawful action drops from the case, and the employee has the ultimate burden of showing a factual dispute whether the employer's nondiscriminatory reason was pretextual. *Hodgens v. General Dynamics Corp.,* 144 F.3d 151 (1st Cir.1998). While the employee's establishment of a prima facie case shifts the burden of production to the employer, the burden of proof always remains with the employee. *Cf. Bodaghi v. Dep't of Natural Resources,* 995 P.2d 288 (Colo.2000).

Here, employee exercised her FMLA rights beginning in June 1999. The parties dispute whether employee suffered adverse employment action and, if so, whether this action occurred as a result of her exercise of FMLA rights.

### 1. Vacation

With respect to employee's claim that employer denied her Christmas leave in 1999, the FMLA does not establish the degree of adverse employment action sufficient for a retaliation claim. Not every unpopular employment decision following FMLA leave is adverse employment action under the FMLA. Adverse employment action means an ultimate employment decision involving hiring, firing, compensation, benefits, or the failure to promote or grant leave. *Hunt v. Rapides Healthcare System, LLC,* 277 F.3d 757 (5th Cir.2001).

Cases addressing retaliation under other federal anti-discrimination laws have similarly held that adverse employment action does not extend to a mere inconvenience or alteration of job responsibilities, *Petersen v. Utah Department of Corrections,* 301 F.3d 1182 (10th Cir.2002)(addressing Title VII of the Civil Rights Act of 1964, § 704(a)), and does not necessarily occur whenever an employee is dissatisfied. *Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241 (8th Cir.1998)(addressing Civil Rights Act of 1964). The employer's retaliation must be materially adverse action, such as hiring, firing, failing to promote, reassigning with different responsibilities, or significantly changing benefits. *See Sanchez v. Denver Public Schools,* 164 F.3d 527 (10th Cir.1998)(addressing Age Discrimination in Employment Act of 1967 and Civil Rights Act of 1964).

When reviewing the sufficiency of evidence of adverse employment action, courts may consider denial of vacation as one factor. *See Coffman v. Tracker Marine, L.P., supra.* However, the denial of vacation alone does not establish adverse employment action when the particular timing of the vacation is not so disruptive that it crosses the line from " 'mere inconvenience' to 'materially adverse' employment action." *Boyd v. Presbyterian Hospital,* 160 F.Supp.2d 522, 537 (S.D.N.Y.2001)(quoting *Lieberman v. Reisman,* 857 F.2d 896, 900 (2d Cir.1988), and addressing Civil Rights Act of 1964).

Here, employee contends her supervisor would not give her four days of vacation around Christmas unless she found someone to cover for her because she had taken more time off than her coworker, who also wanted these days off. Employee obtained coverage for two days and took those days as vacation.

Under these circumstances, we conclude employer's denial of two days' Christmas vacation does not present a fact issue of material adverse employment action.

### 2. Discharge

Employee's termination was adverse employment action following her exercise of FMLA rights, which she argues resulted from the exercise of her FMLA rights.

Because at the summary judgment stage a plaintiff's prima facie burden is often "quite easy to meet," *see Hodgens v. General Dynamics Corp., supra,* 144 F.3d at 165 (quoting *Villanueva v. Wellesley College,* 930 F.2d 124, 127 (1st Cir.1991)), we will assume, without deciding, that resolution of fact issues in employee's favor would establish the three elements of her prima facie retaliation case as to termination. Hence, we will focus on employer's response that it discharged her for failing to respond to its letters and then not returning to work after exhaustion of her extended FMLA leave.

The FMLA allows employers to impose reasonable reporting requirements on employees during FMLA leave, 29 U.S.C. § 2614(a)(5), and to discipline employees for failing to comply. *DeLong v. Trujillo, supra.* Thus, an employer who takes action against an employee for failing to comply with reporting requirements has articulated a legitimate nondiscriminatory reason requiring the employee to show pretext. *See Neide v. Grand Court Lifestyles, Inc.,* 38 F.Supp.2d 938 (D.Kan.1999); *DeLong v. Trujillo, supra.*

Although employee does not expressly challenge employer's stated reasons as pretextual, she again argues her termination was retaliatory because her FMLA leave had not yet been exhausted. She further argues she stated only that she would not return to work under her current supervisor, not that she was refusing to return to work. We are not persuaded.

We have already concluded employer did not discharge employee until after she had exhausted her FMLA leave. Once FMLA leave has been exhausted, the FMLA does not compel an employer to continue holding an employer's job open. 29 U.S.C. § 2614(a)(1).

Employee concedes an employer may refuse to reinstate an employee who has given unequivocal notice of not returning to work, *see* 29 C.F.R. § 825.309(b), but argues that her notice was equivocal because she told employer she wanted to return to work, albeit not under her current supervisor. Even if employee's statement could be interpreted as equivocal, although her constructive discharge argument discussed below assumes otherwise, after making this statement she neither responded to employer's second letter nor made any effort to return to work after receipt of that letter. Hence, we conclude employee has not met her burden of raising a factual issue that employer's articulated reason for discharging her was pretextual.

Accordingly, we conclude employee did not establish a fact issue concerning retaliation.

### D. Constructive Discharge Claim

Plaintiff next argues employer violated the FMLA by constructively discharging her. We disagree.

An employee establishes constructive discharge by presenting sufficient evidence that the employer's deliberate actions made or allowed the employee's working conditions to become so intolerable that a rea-

sonable person in the employee's position would have no choice but to resign, and that the employee resigned because of the employer's actions. *See Montemayor v. Jacor Communications, Inc.,* — P.3d —, 2002 WL 31387067 (Colo.App. No. 00CA1434, Oct. 24, 2002)(collecting cases); CJI–Civ. 4th 31:8 (1998).

■ Here, employee does not dispute her status as an at-will employee, subject to discharge at any time, with or without cause. *See Wisehart v. Meganck,* — P.3d —, 2002 WL 1869371 (Colo.App. No. 01CA1327, Aug. 15, 2002). As an at-will employee, she must pair her constructive discharge claim with a right to continued employment, *cf. Orback v. Hewlett–Packard Co.,* 909 F.Supp. 804 (D.Colo.1995), *aff'd,* 97 F.3d 429 (10th Cir.1996), such as the anti-retaliation provision of the FMLA, 29 U.S.C. § 2615(a)(2). Thus, we analyze employee's constructive discharge claim by considering whether, in retaliation for her exercise of FMLA rights, her supervisor made her working conditions objectively intolerable resulting in her resignation. We are not persuaded that employee has shown a material fact issue concerning constructive discharge.

Initially, we reject employee's assertion that her constructive discharge occurred in February 2000. She did not resign at that time, but began FMLA leave.

Employee further asserts that upon beginning her FMLA leave in February, as a result of health problems allegedly brought on by her supervisor's abuse, she made clear to employer that she could not and would not return to work under this supervisor. Employee apparently contends that her later failure to respond to employer's second letter should be treated as satisfying the resignation element of a constructive discharge claim.

However, early in employee's FMLA leave, employer told her it would discuss her unwillingness to work under this supervisor when she was medically able to return to work. Yet, employee did not explore alternative positions under other supervisors in response to employer's second letter stating that she must contact employer by May 8 or be subject to discharge. Hence, even if her silence could be considered a resignation mo-tivated by previous intolerable working conditions, we discern no factual dispute here concerning constructive discharge because of her uncontested failure to explore alternatives. *See, e.g., Sanchez v. Denver Public Schools, supra* (no constructive discharge where employee failed to pursue available transfer opportunities); *Singer v. Denver School Dist. No. 1,* 959 F.Supp. 1325 (D.Colo. 1997)(same).

Accordingly, we conclude employee's constructive discharge argument did not raise a genuine issue of material fact concerning an FMLA violation.

II. Public Policy Wrongful Discharge

■ Plaintiff finally argues her discharge violated the FMLA, which she contends invokes the public policy exception to at-will employment. We disagree.

■ An employer wrongfully terminates an at-will employee when the termination contravenes a clear mandate of public policy. *Wisehart v. Meganck, supra.* As relevant here, the public policy exception applies when an employer terminates an employee for exercising a statutory right or privilege. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992).

We have concluded that employer did not terminate employee's employment because she exercised her FMLA rights. Even if employer's discharge of employee violated the FMLA, employee still would not be entitled to recovery on a public policy theory because the FMLA provides its own remedy for retaliatory discharge. *See* 29 U.S.C. § 2617; *Gamble v. Levitz Furniture Co.,* 759 P.2d 761 (Colo.App.1988)(statutory remedy for disability discrimination precludes public policy claim for disability-related discharge).

Accordingly, we conclude the trial court did not err in granting summary judgment on employee's public policy claim.

Judgment affirmed.

Judge DAVIDSON and Judge ROY concur.